# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT
### EASTERN DIVISION OF OHIO

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | |
| | ) | |
| Information, including the content of communications, | ) | **No.** 2:23-mj-659 |
| associated with the Proton email address | ) | |
| dillianblakealt@proton.me that is hosted by premises | ) | **Magistrate Judge** Deavers |
| in Geneva, Switzerland but whose contents are | ) | |
| currently in the custody of the FBI Columbus located | ) | |
| at 425 W Nationwide Blvd, Columbus OH 43215 | ) | **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Josh Saltar (Your Affiant), a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state:

## I.  EDUCATION TRAINING AND EXPERIENCE

1. I am a Special Agent (SA) with the FBI and have been since October 2014. I am currently assigned to the Child Exploitation and Human Trafficking Task Force, Cincinnati Division, Columbus Resident Agency. I am primarily responsible for investigating internet crimes against children, including child pornography offenses and the online exploitation of children.

2. During my career as a SA, I have participated in various investigations involving computer-related offenses and have executed numerous search warrants, including those involving searches and seizures of computers, digital media, software, and electronically stored information. I have worked with multiple international law enforcement agencies around the world, focusing on cyber-terrorism and terrorist financing through computer intrusions. I have also assisted on various cases and violations, ranging from violent crimes against children and white collar to healthcare fraud, counterintelligence, and counterterrorism. As part of my duties as a Special Agent, I investigate criminal violations relating to child exploitation and child pornography violations, including the

illegal production, distribution, transmission, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

3. Prior to joining the FBI, I spent four years working as a civilian Intelligence Specialist for the U.S. Air Force at the National Air and Space Intelligence Center located at the Wright-Patterson Air Force Base, under both the cyber and counterspace squadrons, performing classified intel and reverse engineering duties. During my employment, I have received numerous forensic trainings with the both the Department of Defense and Department of Justice, as well as from private sector security conferences. I have received multiple certifications in Windows, mobile, and memory forensics, as well as incident response and penetration testing, and am certified by the Department of Justice as a Digital Extraction Technician. I received my B.A. from Anderson University in computer science, with a focus on programming, artificial intelligence, and machine learning.

4. As a SA with the FBI, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

## II. **PURPOSE OF THE AFFIDAVIT**

5. I make this affidavit in support of an application for a search warrant for information associated with the following Proton account associated with email account dillianblakealt@proton.me (the **SUBJECT ACCOUNT**) that is hosted by the premises controlled by Proton AG, a electronic communications service and remote computing service headquartered at Route de la Galaise 321228 Plan-les-Ouates in Geneva, Switzerland but whose content is currently located at the FBI Columbus Resident Agency located at 425 W Nationwide Blvd in Columbus, Ohio 43215.

6. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the location specifically described in **Attachments A** of this Affidavit. The facts and statements set forth in this affidavit are based on my knowledge, experience, and investigation, as well as the knowledge, experience, and investigative findings of others with whom I have had communications

about this investigation, including other law enforcement officers and agents.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts I believe are necessary to establish probable cause for a search warrant for the **SUBJECT ACCOUNT**.  I have not omitted any facts that would negate probable cause.

7. The **SUBJECT ACCOUNT** to be searched is more particularly described in Attachment A, for the items specified in **Attachment B**, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422(b) – advertising/solicitation for/or, and distribution and receipt of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), distribution, transmission, receipt, and/or possession of child pornography, as well as and the coercion or enticement of a minor(s).

## III.   APPLICABLE STATUTES AND DEFINITIONS

8. Title 18 United States Code, Section 2251(a) makes it a federal crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or have a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that either the visual depiction will be transported or transmitted via a facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce, or if the visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. Subsection (e) of this provision further prohibits conspiracies or attempts to engage in such acts.

9. Title 18 United States Code, Section 2251(d)(1)(A) makes it a federal crime for any person to make, print, publish, or cause to be made, printed or published, any notice or advertisement that seeks or offers to receive, exchange, buy, produce, display, distribute or reproduce, any visual depiction involving the use of a minor engaging in sexually explicit conduct, if such person knows or has reason to know that either the notice or

advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail; or that the notice or advertisement actually was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail.

10. Title 18, United States Code, Section 2252, makes it a federal crime for any person to knowingly transport, receive, distribute, possess or access with intent to view any visual depiction of a minor engaging in sexually explicit conduct, if such receipt, distribution or possession utilized a means or facility of interstate commerce, or if such visual depiction has been mailed, shipped or transported in or affecting interstate or foreign commerce. This section also prohibits reproduction for distribution of any visual depiction of a minor engaging in sexually explicit conduct, if such reproduction utilizes any means or facility of interstate or foreign commerce or is in or affecting interstate commerce.

11. Title 18, United States Code, Section 2252A, makes it a federal crime for any person to knowingly transport, receive or distribute any child pornography using any means or facility of interstate commerce, or any child pornography that has been mailed, or any child pornography that has shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. This section also makes it a federal crime to possess or access with intent to view any material that contains an image of child pornography that has been mailed, shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate commerce by any means, including by computer.

12. Title 18, United States Code, Section 2422(b), makes it a federal crime for any person to knowingly use a means of interstate commerce to persuade, induce, entice, or coerce or attempt to persuade, induce, entice or coerce, any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person may be charged with a crime. Production of child pornography as defined in 18 U.S.C. § 2251(a) is included in the definition of sexual activity for which any person may be charged with a crime.

13. As it is used in 18 U.S.C. §§ 2251 and 2252, the term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A) as actual or simulated: sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the

same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

14. As it is used in 18 U.S.C. § 2252A(a)(2), the term "child pornography"[1] is defined in 18 U.S.C. § 2256(8) as: any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

15. The term "sexually explicit conduct" has the same meaning in § 2252A as in § 2252, except that for the definition of child pornography contained in § 2256(8)(B), "sexually explicit conduct" also has the meaning contained in § 2256(2)(B): (a) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (b) graphic or lascivious simulated (i) bestiality, (ii) masturbation, or (iii) sadistic or masochistic abuse; or (c) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

16. The term "minor", as used herein, is defined pursuant to Title 18, United States Code, Section 2256(1) as "any person under the age of eighteen years."

17. The term "graphic," as used in the definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(B), is defined pursuant to 18 U.S.C. § 2256(10) to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted."

18. The term "visual depiction," as used herein, is defined pursuant to T18 U.S.C. § 2256(5) to "include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

19. The term "computer" is defined in 18 U.S.C. § 1030(e)(1) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or

storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

20. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

21. "Cellular telephone" or "cell phone" means a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may include geographic information indicating where the cell phone was at particular times.

22. Internet Service Providers" (ISPs), used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

23. "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

24. As it is used throughout this affidavit and all attachments hereto, the term "storage media" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## IV. BACKGROUND REGARDING COMPUTERS, THE INTERNET, AND ONLINE SERVICE PLATFORM PROTON AG

25. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience and conversations with other officers, I know the following:

26. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. Many individual computer users and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with the ISP. Those records may include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, Internet Protocol addresses and other information both in computer data format and in written record format.

27. Computers and the internet have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which those who have a sexual interest in children interact with each other and with minors, adding to the methods used by child pornography collectors to trade child exploitation materials and to sexually exploit children online.  Computers and the internet serve four functions in connection with child pornography and the sexual exploitation of minors.  These are production, communication, distribution, and storage.

28. Internet-based communication structures are ideal for the child pornography collector or those seeking to sexually exploit children.  Having both open as well as anonymous communication capability allows the user to locate others of similar inclination and still maintain their anonymity, or to hide their true identity when seeking out minors online.  Once contact has been established, it is then possible to send messages and graphic images to other trusted child pornography collectors, or to convince a child to sex such images or meet for the purpose of sexual activity.  Individuals seeking to engage in such activities can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute pornography.  These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.

29. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Google, Inc., among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.

30. Common terminology for digital file storage on host computers or servers is known as cloud storage.  In cloud computing, cloud storage services work as a network of connected data servers collectively used to allow a user to share and access files across multiple devices.  Cloud storage providers own and maintain the offsite servers that make up this network at their data centers.  The user has on demand access just as if the digital files were stored on the user's own devices.  In addition to allowing the user to access the

files from multiple devices, cloud storage eliminates the need for the user to maintain physical storage devices, thus making their personally owned devices appear free of contraband.

31. As is the case with most digital technology, communications by way of computer or mobile devices can be saved or stored on the computer or mobile device. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or mobile device, or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

32. From my review of publicly available information provided by Proton AG administrators, I am aware of the following about Proton:

33. Proton is owned and operated by Proton AG, which operates exclusively out of Geneva, Switzerland. Additionally, Proton advertises the fact that since it is based and operates out of Switzerland, it means a user's data is "protected by some of the strictest privacy laws in the world". Proton notes on its website that it is a neutral and safe haven for personal data that is committed to defending a user's freedom.

34. In order to create a Proton Account, users can access https://proton.me/ and can sign up for either a free or paid account, which allows the users access to certain Proton tools and features described in more detail below. Proton applications are available on all devices, including Android, iPhone, and iPad, Windows, Mac, Linux, and more, and with one Proton account, users can use all privacy-by-default services.

35. Proton offers a variety of features, including an email service as well as a cloud storage and file hosting services. Users will have access to all these features, with users who pay for the premium account are able to have a larger amount of storage for their data as well as a faster internet connection.

36. Proton Mail is an encrypted email service that a user has access to with a Proton Account. Those users who pay for their accounts are able to create 15 different email addresses and

send and receive unlimited email messages per day.

37. Proton Drive is an end-to-end encrypted cloud storage service that allows users to store up to 3 terabytes of data, depending on what tiered plan the user has. In addition to cloud storage, Proton Drive allows for encrypted file and folder sharing, so that multiple users can access the same files and folders shared by a single user.

38. Proton advertises its encryption as end-to-end encryption, so that only an individual with a username and password is able to access the content in a Proton account. Proton goes on to say that not even the Proton company has access to an individual user's data.

## V. **INVESTIGATION AND PROBABLE CAUSE**

39. On or about September 7, 2023, the National Center for Missing and Exploited Children (NCMEC) received a report from Google, LLC that indicated three videos and three images of suspected child sexual abuse material had been uploaded to Google's infrastructure by the following Google Account:

| | |
|---|---|
| Name: | Andrew Hill |
| Phone: | 740-704-8412 (verified) |
| DOB: | 02/13/1998 |
| Email Address: | hamiltonfirst78@gmail.com (verified) |
| Email Address: | hamiltonfirst@icloud.com |
| IP Address: | 2603:6011:c600:83c3:cd65:5e95:19b1:dfa2 |

40. On or about October 18, 2023, the NCMEC generated a CyberTipline report documented as report number 173543116. In that report, the IP address had been geolocated to the Southern District of Ohio and was therefore forwarded to the Ohio Internet Crimes Against Children (ICAC) Task Force for further investigation.

41. On or about October 24, 2023, the ICAC Task Force issued a subpoena to Charter Communications for the IP Address 2603:6011:c600:83c3:cd65:5e95:19b1:dfa2. On October 30, 2023, Charter responded and provided the following information:

| | |
|---|---|
| Subscriber Name: | DAVID HAMILTON |
| Service Address: | 1128 VILLA CIR, HEATH, OH 43056-1080 |
| Username: | DHAMILTON213@SPECTRUM.NET, HAMILTONFIRST@OUTLOOK.COM |
| Phone number: | (740)586-2962 |

42. On or about October 31, 2023, based on the location data indicating the IP address used to upload the child sexual abuse material came from Heath, Ohio, the ICAC Task Force passed the information to Licking County Sheriff's Office (LCSO).

43. On or about November 2, 2023, LCSO obtained and executed a search warrant for the residence located at 1128 Villa Circle in Heather, Ohio. Located at the residence was David Hamilton (herein after referred to as **DH**) as well as Xavier Michael Daughenbaugh (herein after referred to as **MD**). **DH** was interviewed on scene, and confirmed to LCSO detectives that his email address was hamiltonfirst@icloud.com.

44. The LCSO also conducted an interview with **MD** on November 2, 2023, during which, **MD** admitted that there had been sexually explicit images and videos of minors that were sent to him, which he then deleted after opening and viewing them. **MD** admitted to viewing the content on **DH**'s device. **MD** also admitted to viewing the child sexual abuse material on his own cellular phone when **DH** would send it to him over the mobile application Telegram.

45. After the search warrant was executed, both **DH** and **MD** were arrested for Pandering Sexually Oriented Matter Involving a Minor or Impaired Persons.

46. As part of their continued investigation into **DH** and **MD**, law enforcement began reviewing conversations between them in the Telegram application and identified numerous images and videos of child sexual abuse material sent by **DH** to **MD**.

47. Additionally, LCSO identified part of a conversation that started with a message **DH** sent to **MD** that read, in summary, as follows:

> **DH**: I really want to fuck a boy with you guys. Like not even our son. Just a pedo's son or even Fuck [Minor Victim One/MV1[1]]…There are a good bit in Zanesville… Just a random note. You learn a lot of things in drug town.
> **MD**: I thought about fucking [Minor Victim 2/MV2[2]]
> **DH**: Think about it. [MV1] is already fucking stupid. We ask [Jane Doe One[3]] to watch [MV1] for a few days. And we slip a traz in and rail him…We buy some goodnites too. So, he never has to worry and we just take it out on his ass

---

[1] Throughout the course of the investigation, Minor Victim One or MV1 was identified by law enforcement as an approximately six-year-old male that DH and MD both had access too.
[2] Throughout the course of the investigation, Minor Victim Two or MV2 was identified by law enforcement as an approximately six-year-old male that DH and MD both had access too.
[3] Throughout the course of the investigation, Jane Doe One was identified by law enforcement as a relative of Minor Victim One with whom Minor Victim One resided.

      **MD:**   Yea but I'm sure his ass would hurt and [Jane Doe One] would take him to the hospital for a checkup".

48. After reading the messages above, law enforcement noted that during the execution of the search warrant at the residence of **DH** and **MD**, LCSO had located a bag that contained Trazodone and Buipropion, both prescribed to **DH**. Additionally, LCSO found the Goodnites brand of diapers in sizes small, medium, and large as well as KY lubricating jelly, condoms, and stuffed animals.

49. On November 6, 2023, LCSO detectives reached out to your affiant at the FBI for assistance with the investigation. Your affiant first reviewed the forensic extraction that was obtained by LCSO of the iPhone 12 mini belonging to **MD**. In reviewing that extraction, a Telegram conversation containing 1,324 messages exchanged between **MD** and **DH** was located and documented. The following excerpt between the two took place on or about September 4, 2023 and read as follows:

      **DH -**   So this is the playlists I was talking about and here are some of the videos and some added pictures for whatever reason. But I do apologize if you aren't into this stuff. But I've wanted to watch some of these with you for a while and please don't say anything to [John Doe One[4]]. I don't want him to get a wrong idea okay. And if I decide to show him these I want to be the one to explain it. But we don't really talk about our dark fantasies and I wouldn't do any of this stuff if you or [John Doe One] were okay with this stuff. But I want us to have a family of boys who are in diapers forever. They never learn about the potty and the only person who can use the potty is [John Doe One]. Because he is the head daddy. But all three of us are dads to these boys. And they grow up learning to love our big cocks and your small pp (love you drago😈) but we all have the understanding that it's okay for us to enjoy our boys however we want. And know that the other two won't be upset that one of us is playing with the boys however we wanted and know that we have the support of the other two. And not be afraid if one of us joins in to also play with the kid or even the other one.

           I would love to give them their very own puppy names. But the reason for that is because I would love for us to rent out the boys to our friends. Because sharing is caring. And it would let the boys learn about working for their money. And they could use it to buy toys that they want to have and maybe a toy here and there we wanted to see them play with too. But it would also let us cut the cost of having to to pay for some many diapers. I also love doggy cock of that wasn't obvious. But have a dog that was

---

[4] John Doe One was identified as the male roommate of DH and MD.

always trying to knot someone me, you, [John Doe 1] or even the boys. Imagine seeing one of the boys being knitted by the house pet. Getting locked in with that massive knot. It's his first time and he gets knotted. He can feel the cum just filling him up and the knot making him feel like he is getting split open and he is crying at first but comes to realize that he is really liking this shit.

Or coming home and [John Doe One] just had a bad day. So he takes one of the boys and just takes them to their bed. He rips off their diaper and just goes ham on their tight ass. Putting his frustration into our kid's ass. So he knows that dad had a hard day and our boys are meant to be ready to be served 24/7. Wake up horny. Rape our son. Want to try something new and kinky. Just do it on our son. Want to start training them to get fisted. Just do it. If you want to start slow on it then start slow but if you want to just be cruel then do it. But always know that you had our support. Or even if one night we let the kids have a sleepover in our room. And we all enjoy them, we'd let the dog come in and enjoy the fun.

But I might "accidentally" put laxatives in their stuff sometimes. Because I love seeing blow outs and it would be a stinky day for the whole family. But I do apologize if this is giant red flag or something. But I would love to hear what you think and of you had questions or added thoughts dark and twisted or just normal ones. I would love to answer them for you or even give you what I think. I'm pretty no limits though in the realm of taboos fucked up and just socially not accepted

**DH** then distributed to **MD** numerous images and videos of child sexual abuse material depicting prepubescent and pubescent male minors engaged in sex acts with other minors, adults, and animals and engaged in masturbation, lascivious exhibition of their genitals and pubic region, or being subjected to sadistic and masochistic abuse.  For examples, one of the videos, which was approximately one minute in length and titled *telegram-cloud-document-1-5163781910886875997* depicted a young boy, approximately 6-9 years old, laying on his back with his anus facing the camera. In the video, an adult hand begins inserting and removing a black sexual device in the boy's anus.  In a second video approximately thirty seconds in length titled *telegram-cloud-document-1-5163781910886876000* depicted a boy, approximately 7-10 years old performing oral sex and masturbating a dog. At approximately 19 seconds into the video, the boy appears to be urinating into a cup that he has placed into his groin, later holding that cup to the camera and then drinking out of that same cup with a straw.  In response to receiving these videos and images, the following conversation ensued:

**MD:** I just wanted to say I'm really happy and proud of you for telling me these things and sharing your dark fantasies with me, it makes me happy and feel hot that you'd want to share that with me and want to do those things with me, won't lie got horny reading the message twice because if I'm being honest… I've had the same fantasies, I've wanted to raise sons so we as a family could have fun and do things with each other at all ages even when I know it's wrong. I've want to also get fucked and used by our sons so they can make their dads feel good too.

I've wanted to get fucked by a horse/donkey and take a dog knot in my ass so it's not just you bubba, I'm so horny thinking about these things with you guys because I'd want that for us. I love you and would honestly want to hear more if you'd like to share how you found out you like those things or how you got into it because your interests are hot and you have my support always because I love and care for you.

**MD:** I can't wait to watch and jerk each other off hehe

**DH:** Would you be okay with us renting our boys out to other pervy men that we picked. What are your thoughts on us spit roasting the boys. How would you feel if you saw one of us shoving our cock down our boy's throat so hard and ruff that they pass out from not being able to breath. And we climax at that moment. Then pulling out our spit covered cock and let that boy drop to the ground until he comes to it. What about gaping our sons just for the hell of it or even just deciding to first our son just to do it and watch one of our boys scream from the pain. And we fist them until they climax or piss themselves. Are those harder ones okay with you. Or is there a line….[5]

50. On or about November 20, 2023, your affiant received an email from the FBI's National Threat Operations Center (NTOC) regarding an anonymous complaint that was submitted earlier that morning. The complaint had been submitted by an individual who was likely residing in Florida based off the IP Address the individual was utilizing at the time they submitted the complaint. The individual submitting the complaint indicated that they were a minor, Minor Victim Three, that had been contacted by **DH** on the telegram mobile application and asked to produce explicit images of themselves. Minor Victim Three reported that **DH** asked Minor Victim Three to upload those images to a Proton Drive account and provided the username and password for the Proton account as followed:

---

[5] The conversation regarding the above fantasies and the exchange of child sexual abuse material between **DH** and **MD** continued on extensively and the above included information is only a small portion of the texts and content exchanged.

Username:      dillianblakealt@proton.me
Password:      A!phaD0m

51. Minor Victim Three further reported that when they logged into the Proton Drive account associated to **DH**, Minor Victim Three observed sexually explicit images and videos of young children. Minor Victim Three also stated that **DH** asked them to send explicit pictures over a month time frame and continued to request more. After Minor Victim Three sent images to **DH**, **DH** informed Minor Victim Three that **DH** was in a group that raped, hurt, drugged, and killed minors. At that point, Minor Victim Three became scared that **DH** would do that to them and deleted their Telegram account so that **DH** could no longer communicate with them.

52. The complainant indicated they were able to identify DH's name and address from the linked Proton Mail account which listed **DH**'s credit card statement.

53. In the NTOC complaint, Minor Victim Three provided the following information in the "subject" portion of the complaint:

First Name:      David
Last Name:      Hamilton
Email:           dillianblakealt@proton.me
Address:         1128 Vila Cor
City:            Heath
State:           OH
Zip:             43056

54. After receiving the information from Minor Victim Three on November 20, 2023, in order to preserve the data in the Proton Account and protect the account from deletion, your affiant utilized the username and password provided by Minor Victim Three to login to the **SUBJECT ACCOUNT** so that the account password could be changed in order to protect the account from alteration or deletion by a third party.[6] This was also done to prevent the continued distribution, receipt, or viewing of child sexual abuse material potentially contained within the **SUBJECT ACCOUNT**.

55. Based on the information that has been gathered to date by your affiant, your affiant has

---

[6] The changing of a password on a **SUBJECT ACCOUNT** is similar to how investigators place a cellular device in "airplane mode" upon seizing it in order to prevent remote wiping or the deletion of data on the device while an application for a search warrant is being sought.

reason to believe that the individual utilizing the **SUBJECT ACCOUNT,** most likely **DH,** was seeking out, advertising, and sending sexually explicit photographs of minor males. In addition, the **SUBJECT ACCOUNT** appears to have been used to produce, receive, distribute, and procure explicit images, which includes, but is not limited to, child pornography. Therefore, it is likely that the **SUBJECT ACCOUNTS** contains items which constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422(b) – advertising/solicitation for/or, and distribution and receipt of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), distribution, transmission, receipt, and/or possession of child pornography, as well as and the coercion or enticement of a minor(s).

VIII. **COMMON CHARACTERISTICS OF INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN**

56. Based on my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in communicating about and engaging in sexual abuse of children

- Those who communicate about and engage in sexual abuse of children and exchange or collect child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature and communications about such activity.

- Those who communicate about and engage in sexual abuse of children and trade or collect child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media, including digital files. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

- Those who communicate about and engage in sexual abuse of children and trade or collect child pornography sometimes maintain any "hard copies" of child pornographic material that may exist that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These child pornography collections and communications are often maintained for several years and are kept close by, usually at the collector's residence. In some recent cases, however, some people who have a sexual interest in children have been found to download, view, then delete child pornography on a cyclical and repetitive basis, and to regularly delete any communications about the sexual abuse of children rather than storing such evidence on their computers or digital devices. Traces of such activity can often be found on such people's computers or digital devices, for months or even years after any downloaded files have been deleted.

- Those who communicate about and engage in sexual abuse of children and trade or collect child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

- When images and videos of child pornography or communications about sexual abuse of children are stored on computers and related digital media, forensic evidence of the downloading, saving, and storage of such evidence may remain on the computers or digital media for months or even years even after such images and videos have been deleted from the computers or digital media.

57. Based upon the conduct of individuals involved in seeking/soliciting, receiving, distributing, and/or collecting child pornography set forth in the above paragraphs, and the facts learned during the investigation in this case, namely, that **DH** was in possession of child sexual abuse material by being able to send it to **MD** via Telegram, as well as discussing violent sexual actions with minors, and that a separate complaint from an

individual believed to be a minor indicating **DH** was also communicating with them on Telegram and utilized similar violent sexual conversations that **DH** had used with **MD**, and was asking the minor for nude images and to upload them to the **SUBJECT ACCOUNT**. Your affiant therefore submits that there is probable cause to believe the evidence of the offenses of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422(b) – advertising/solicitation for/or, and distribution and receipt of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), distribution, transmission, receipt, and/or possession of child pornography, as well as and the coercion or enticement of a minor(s) will be located in the **SUBJECT ACCOUNT.**

## IX. <u>**CONCLUSION**</u>

58. Based on the aforementioned factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422(b) – advertising/solicitation for/or, and distribution and receipt of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), distribution, transmission, receipt, and/or possession of child pornography, as well as and the coercion or enticement of a minor(s) have been committed, and evidence of those violations is located in the content of the **SUBJECT ACCOUNT** described in Attachment A. Your affiant respectfully requests that the Court issue a search warrant authorizing the search of the locations identified in Attachment A and the seizure of the items described in Attachment B.

_____

Josh Saltar
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this __27th__ day of November, 2023.



Elizabeth A. Preston Deavers
**United States Magistrate Judge**

**ATTACHMENT A**
**DESCRIPTION OF PLACE TO BE SEARCHED**

This warrant applies to information, including the including the content of communications, posts, and comments, with the following Proton account:

- **Proton username dillianblakealt@proton.me**

that is hosted by the premises controlled by Proton AG, a electronic communications service and remote computing service headquartered at Route de la Galaise 321228 Plan-les-Ouates in Geneva, Switzerland but whose content is currently located at the FBI Columbus Resident Agency located at 425 W Nationwide Blvd in Columbus, Ohio 43215.

## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED

The following materials which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422(b) – advertising/solicitation for/or, and distribution and receipt of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), distribution, transmission, receipt, and/or possession of child pornography, as well as and the coercion or enticement of a minor(s):

1. Any and all child pornography and/or child erotica.

2. Evidence of communications related to the production, possession, receipt, or distribution of child pornography.

3. Evidence the user possessed, exchanged, or requested visual depictions of minors, from other adults or minors themselves, whether clothed or not, for comparison to any child pornography or child erotica found during the execution of this search warrant or obtained during the course of this investigation.

4. Any and all chat, text, email, or other electronic communications regarding sexual activity with or by minors, including information pertaining to the persons engaging in such communications, their identities, and locations.

5. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation.

6. Evidence of who used, owned, or controlled the **SUBJECT ACCOUNT** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

7. Evidence of software that would allow others to control the account, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

8. Evidence of the lack of such malicious software.

9. Evidence indicating how and when the account was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the account user.

10. Evidence of programs (and associated data) that are designed to eliminate data from the account.

11. Evidence of the times the account was used.

12. Records of or information about Internet Protocol addresses used by the account.

13. Contextual information necessary to understand the evidence described in this attachment.

14. Records, information, and items relating to violations of the statutes described above.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.